STATE of Wisconsin, Plaintiff-Respondent,

v.

Wayne Charles SLAGLE, Defendant-Appellant.

Court of Appeals

*No. 2006AP775–CR. Submitted on briefs November 7, 2006. —Decided March 8, 2007.*

2007 WI App 117

(Also reported in 731 N.W.2d 284.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. LUNDSTEN, P.J. Wayne Slagle appeals the part of his judgment convicting him of keeping or maintaining a vehicle "used for . . . keeping . . . [controlled substances] in violation of [Chapter 961]." WIS. STAT. § 961.42(1).[1] This crime is commonly referred to as keeping a drug vehicle. Slagle challenges the sufficiency of the evidence. The question is whether evidence showing that Slagle used his truck to transport cocaine on a single occasion for an unknown distance satisfies the requirement that a vehicle be used for "keeping" the cocaine within the meaning of § 961.42(1). We conclude that the evidence is insufficient to show "keeping," and reverse and remand with directions.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## Background

¶ 2.  Police officers stopped Slagle in his truck after receiving a complaint that Slagle pointed a gun at someone. In an inside pocket of Slagle's jacket, police found a "solid corner piece" of cocaine weighing about 12.3 grams. The officers also found a .357 magnum handgun.

¶ 3.  The State charged Slagle with possession of cocaine with intent to deliver in violation of WIS. STAT. § 961.41(1m)(cm) and with keeping a "drug car" in violation of WIS. STAT. § 961.42.[2] Slagle's theory of defense at trial was that he confiscated the cocaine from his girlfriend, a cocaine addict who performed acts of prostitution to support her habit. The jury found Slagle guilty on both charges. Slagle received a seven-and-one-half-year sentence (two and one-half years of initial confinement and five years of extended supervision) on the possession-with-intent-to-deliver conviction and a concurrent three-year sentence (one year of initial confinement and two years of extended supervision) for his "drug car" conviction.

## Discussion

■■

¶ 4.  When reviewing the sufficiency of the evidence, we will not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and

---

[2] The State also charged Slagle with carrying a concealed weapon in violation of WIS. STAT. § 941.23, but the jury found Slagle not guilty on that charge. Slagle informs us that a disorderly conduct while armed charge against him was dismissed.

force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). The evidence here, viewed most favorably to the State, is as follows.

¶ 5. Two police officers stopped Slagle while he was driving his pickup truck. A "solid corner piece" of cocaine weighing about 12.3 grams was found in an inside pocket of the jacket Slagle was wearing. Slagle's truck had separate front driver and passenger seats and a rear bench seat. In the middle of the rear bench seat, on top of a pile of personal items, officers found an unloaded .357 magnum revolver handgun in a holster. Ammunition fitting this handgun was found between the two front seats. One of these boxes contained hollow point bullets. Also, six hollow point bullets were found loose in Slagle's right front coat pocket. Observations made by the officers while stopping Slagle support a finding that the revolver was loaded and was in Slagle's right front pocket when police first spotted him, but that Slagle emptied the gun, holstered it, and put it on the seat behind him. A police officer testified that the condition and amount of cocaine, and the presence of the handgun and ammunition, supported a finding that Slagle intended to go to some location, break down the cocaine into smaller amounts, and sell it.

¶ 6. Slagle argues that the evidence and factual inferences we recite above are insufficient to support his conviction under WIS. STAT. § 961.42 for keeping or maintaining a place used for manufacturing, keeping, or delivering controlled substances.[3] Because the State

[3] WISCONSIN STAT. § 961.42(1) reads:

> It is unlawful for any person knowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat,

charged Slagle with keeping or maintaining a "vehicle" used for "keeping" cocaine, the State needed to prove the following three elements:

1. Slagle kept or maintained a vehicle.

2. Slagle's vehicle was used for keeping cocaine. "Keeping" requires that the cocaine be kept for the purpose of warehousing or storage for ultimate manufacture or delivery. It requires more than simple possession.

3. Slagle knew the vehicle was used for keeping cocaine.

*See* WIS JI—CRIMINAL 6037B. The first and second elements both employ variations of the word "keep." Thus, it might be said that Slagle was charged with "keeping a vehicle used for keeping a controlled substance." Our attention is focused on the second "keeping" in this phrase, that is, on the second element listed above.[4]

¶ 7. The interpretation of the statutory term "keeping" as "warehousing or storage for ultimate manufacture or delivery" comes from *State v. Brooks*, 124 Wis. 2d 349, 354–55, 369 N.W.2d 183 (Ct. App. 1985). Neither party challenges this interpretation of

aircraft or other structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for manufacturing, keeping or delivering them in violation of this chapter.

[4] We note that the "delivery" option in WIS. STAT. § 961.42(1) was not before the jury. This is consistent with the State's theory that Slagle had acquired a large "chunk" of cocaine that he intended to break down later for sale to others. Under this theory, Slagle was not in the process of delivering the cocaine to another when he drew the attention of police.

the statute.[5] Furthermore, Slagle does not dispute that the evidence shows the cocaine in his truck was "for ultimate manufacture or delivery." The only dispute here is whether the trial evidence shows the cocaine was being "warehoused" or "stored" in Slagle's truck. Boiled down, the question is whether evidence showing that a person is using a vehicle to transport cocaine on a single occasion for an unknown distance satisfies the requirement that the vehicle is being used for "warehousing or storage."

¶ 8.    The State argues that there is no requirement that warehousing or storage be for any particular

---

[5] We follow *State v. Brooks*, 124 Wis. 2d 349, 369 N.W.2d 183 (Ct. App. 1985), but note that our attention in that case was on a different aspect of "keeping" than the one at issue here. In *Brooks*, the defendant argued that the statute was not directed at keeping for personal use, but rather at "keeping" that is "part of a larger criminal enterprise." *Id.* at 354. We agreed, differentiating based on purpose:   the "mere possession" for personal use contrasted with "possession for more sinister purposes." *Id.* at 354–55. Nonetheless, in *Brooks*, we interpreted "keeping" as meaning "warehousing or storage," and the State accepts that interpretation here.

It also warrants brief mention that the jury instruction language challenged in *Brooks* is consistent with our "warehousing or storage" interpretation. The challenged instruction defined knowingly "keeping" as " 'knowing of something's presence, knowing of its accessibility and exercising dominion and control over the place where it is kept. It implies something more than a transitory presence. It means some duration over a period of time.' " *Id.* at 354. In *Brooks*, we concluded that this language was insufficient because it did not incorporate the notion that "keeping" must be for the "more sinister purpose[]" of "ultimate manufacture or delivery." *See id.* at 354–55. As we shall see, in this case we do not add to the "warehousing or storage" interpretation. Rather, we apply that interpretation to a particular set of facts.

period of time. Thus, the State's position seems to be that controlled substances are "stored" in a vehicle while they are being transported, regardless of the transportation time or circumstances.

¶ 9. Slagle readily admits that he was using his truck to transport the cocaine. But he argues that there is no evidence he used his truck to "store" the cocaine. In Slagle's view, it is apparent that transporting an item is not equivalent to warehousing or storing an item.[6]

¶ 10. We agree with Slagle that the common meaning of these terms does not encompass merely possessing an item while transporting it. We conclude that Slagle was not warehousing or storing his cocaine when he carried it in his truck while moving from one location to another. Accordingly, we further conclude that the evidence is insufficient to support a jury finding that Slagle used his truck for the purpose of "keeping" cocaine.

¶ 11. We have resolved the question presented by the facts in this case, but acknowledge that this decision leaves significant questions unanswered. The evidence here shows nothing more than transportation. But, of course, vehicles are often used for storage. It would seem that a person who places cocaine in a car for an

---

[6] Slagle refers us to *State v. Nixa*, 121 Wis. 2d 160, 360 N.W.2d 52 (Ct. App. 1984), but that case involved a different statute with different language. It provides no guidance here. In *Nixa*, we held that the evidence was insufficient to show that a building used for a gambling party was a "gambling place" under Wis. Stat. § 945.01(4). The evidence in *Nixa* was lacking because there was no evidence of prior gambling in the building. *Nixa*, 121 Wis. 2d at 163–67. The language in § 945.01(4) differs significantly; it speaks in terms of a place "one of whose principal uses" is certain forms of gambling.

extended period of time, including significant periods when the car is not being driven, is using the car to store the cocaine. But what if the evidence shows that a defendant placed cocaine in a car's glove compartment at one location, drove to a second location where he left the car parked for a short time, and then drove on to his final location where he removed the cocaine? Has the car been used for storage? Does the answer depend on how long the car was parked? Such questions must be left for another day.

¶ 12.    In sum, because the evidence at trial was insufficient to support Slagle's conviction for keeping a drug vehicle, we reverse that conviction. Double jeopardy principles prohibit retrial on that charge. As Slagle requests, we remand with directions that the circuit court enter an amended judgment of conviction deleting the drug vehicle conviction and the corresponding concurrent sentence.

*By the Court.*—Judgment reversed and cause remanded with directions.